People v Brisman (2025 NY Slip Op 01258)

People v Brisman

2025 NY Slip Op 01258

Decided on March 6, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 6, 2025

111493
[*1]The People of the State of New York, Respondent,
v
Jason Brisman, Appellant.

Calendar Date:October 13, 2021

Before:Egan Jr., J.P., Clark, Pritzker and Lynch, JJ.

Clea Weiss, Ithaca, for appellant.
Weeden A. Wetmore, District Attorney, Elmira (Philip A. Alvaro of counsel), for respondent.

Pritzker, J.
Appeal (upon remittal from the Court of Appeals) from a judgment of the County Court of Chemung County (Christopher Baker, J.), rendered December 17, 2018, upon a verdict convicting defendant of the crime of promoting prison contraband in the first degree.
The relevant facts pertaining to this appeal are set forth in our prior decision (200 AD3d 1219 [3d Dept 2021], revd ___ NY3d ___, 2025 NY Slip Op 00123 [Jan. 9, 2025]). In that decision, we affirmed the judgment of conviction for promoting prison contraband in the first degree finding, as relevant here, that defendant's sentence of 3½ to 7 years was not harsh and excessive (id. at 1222). Upon appeal, the Court of Appeals found that this Court had "applied an erroneous standard," and thus remitted for review of the sentencing issue under the proper standard (___ NY3d at ___, 2025 NY Slip Op 00123, *1).[FN1]
Defendant contends that the sentence imposed was harsh and excessive and served to punish him for exercising his Sixth Amendment right to a trial. Defendant concedes that he did not preserve his claim regarding the vindictive nature of the sentence as he failed to raise it at sentencing and, instead, urges us to reduce the sentence in the interest of justice "in recognition of the undeserved and unexplained disparity between 'the standard offer' and the sentence imposed after trial." To that end, at arraignment on the indictment charging defendant with promoting prison contraband in the first degree, County Court asked the People if they were "extending the standard offer on this matter." The People confirmed they were, and the court informed defendant that this would mean a plea to attempted promoting prison contraband in the first degree with a prison sentence, as a second felony offender, of 1½ to 3 years, which would run consecutive to the sentence that defendant was already serving. Defendant rejected this offer and proceeded to trial, after which he was convicted as charged and sentenced to the maximum sentence, 3½ to 7 years, as a second felony offender (see Penal Law §§ 70.06 [3] [d]; [4] [b]; 205.25 [2]).
At sentencing, County Court noted, from a review of defendant's presentence report, that defendant had "a very horrendous criminal history" and that the majority of defendant's convictions stemmed from violence against others. The court also noted that this conviction was defendant's third conviction since being incarcerated in the Department of Corrections and Community Supervision (hereinafter DOCCS). The court went on to enunciate that, in imposing the sentence, it was considering, among other things, "both general and specific deterrents" and that the sentence should deter not only defendant, but also "all similar[ly] situated inmates who decide to promote or possess prison contraband and threaten the safety and security of anyone that's inside that prison." The court also discussed its consideration of rehabilitation and noted that defendant had been removed from numerous DOCCS [*2]programs due to disciplinary issues, including fighting, and opined that there was little hope for defendant to be rehabilitated.[FN2] Then, when considering retribution and isolation, the court stated that it was "clear that [defendant] deserve[s] to be punished and punished severely for this conviction." After considering all of the aforementioned factors, County Court imposed the maximum sentence of 3½ to 7 years.
We have carefully reviewed the record and find it devoid of any evidence to support defendant's contention that he was punished for exercising his right to trial. Certainly, had defendant preserved this contention, County Court would have had the opportunity to address the disparity between the imposed sentence and that previously offered (compare People v Ford, 156 AD3d 1242, 1246 [3d Dept 2017], lv denied 31 NY3d 1013 [2018]). Indeed, "the mere fact that a sentence imposed after trial is greater than that offered in connection with plea negotiations does not, without more, establish retaliation or vindictiveness" (People v Luciano, 152 AD3d 989, 995 [3d Dept 2017] [internal quotation marks and citations omitted], lv denied 30 NY3d 1020 [2017]; see People v Shoemaker, 119 AD3d 1073, 1077 [3d Dept 2014], lv denied 25 NY3d 992 [2015]). While defendant attempts to paint the court's comments regarding general deterrence as a warning to incarcerated individuals not to go to trial, there is no support for this assertion in the record and, of course, it is entirely appropriate for the court to have considered general deterrence when imposing a sentence (see People v Lanfair, 18 AD3d 1032, 1034 [3d Dept 2005], lv denied 5 NY3d 790 [2005]; People v Jensen, 111 AD2d 986, 987 [3d Dept 1985]; People v Whiting, 89 AD2d 694, 694 [3d Dept 1982]). As such, "[w]e find that the record contains no support for the conclusion that the sentence was retaliatory rather than based upon the seriousness of the offense[ ] and other relevant sentencing factors" (People v Luciano, 152 AD3d at 995 [internal quotation marks, brackets and citation omitted]; see generally People v Pleasant, 149 AD3d 1257, 1261 [3d Dept 2017], lv denied 30 NY3d 1022 [2017]; People v White, 211 AD2d 982, 986 [3d Dept 1995], lv denied 85 NY2d 944 [1995]). As to the sentence generally, having thoroughly reviewed the record, we decline to exercise our interest of justice jurisdiction to reduce defendant's sentence (see CPL 470.15 [6] [b]).Given his lengthy history of violence against others, his lengthy disciplinary record while incarcerated at DOCCS and the seriousness of the offense, we do not find the sentence, albeit the maximum, to be unduly harsh or severe (see People v Montgomery, 229 AD3d 899, 906 [3d Dept 2024], lv denied 42 NY3d 972 [2024]; People v Hunter, 219 AD3d 975, 981 [3d Dept 2023]; People v Robinson, 217 AD3d 1269, 1269 [3d Dept 2023]; People v Shabazz, 211 AD3d 1093, 1101 [3d Dept 2022], lv denied 39 NY3d 1113 [2023]).
Egan Jr., J.P., Clark and Lynch, JJ., concur.
ORDERED [*3]that the judgment is affirmed.

Footnotes

Footnote 1: As noted by the Court of Appeals, prior to its decision in this case, this Court had already "led the charge in . . . bring[ing] [our] jurisprudence back in line with the Appellate Division's historical powers" and began properly stating and using the correct legal standard (___ NY3d at ___, 2025 NY Slip Op 00123, *4).

Footnote 2: While County Court did not specifically reference defendant's disciplinary history in its entirety, we do note that the presentence report reflects that defendant, at the time of sentencing, had amassed 19 tier II infractions and 16 tier III infractions while incarcerated.